**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America | Civil No. 08-5176 (DWF/SRN) |
| Plaintiff, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| Mary M. Moriarty, | |
| Defendant. | |

___

Mary L. Trippler, Assistant United States Attorney, United States Attorney's Office, counsel for Plaintiff.

Mary M. Moriarty, *Pro Se*, Defendant.
___

## INTRODUCTION

The United States of America (the "Government") commenced this action against Mary M. Moriarty ("Moriarty") to collect payment from Moriarty on her unpaid student loans. This matter came before the Court on March 13, 2009, pursuant to the Government's motion for summary judgment and dismissal of the counterclaim. For the reasons set forth below, the Court grants the motion.

## BACKGROUND

*Overview of Applicable Student Loan Program*

The Federal Family Loan Program ("FFELP"), formerly called the Guaranteed Student Loan Program, is authorized under Title IV, Part B of the Higher Education Act of 1965, as amended ("HEA"), 20 U.S.C. §§ 1071, *et seq*. Federal Stafford Loans (both

subsidized and unsubsidized), among other loans, are available through FFELP.[1]  Under FFELP, lenders use their own funds to make loans to qualified borrowers to facilitate the borrowers' attendance at eligible post-secondary schools.  These loans are insured by guaranty agencies, generally state and nonprofit private institutions, and are reinsured and often subsidized by the Department of Education ("DOE").  The guaranty agencies have a contractual right against the United States for reimbursement with respect to losses on the unpaid principal balance and accrued interest on the loan.  Thus, upon default, the private holder of the loan turns over the loan to the guaranty agency, who is reinsured by the federal government.

In the event of a borrower's default in repaying the loan, the guaranty agency, pursuant to its guarantee commitment, pays on the claim to the holder of the loan, which may be either the original lender or another eligible financial institution to whom the loan was assigned, and takes assignment of the loan.  The DOE reimburses the guaranty agency for a percentage of the losses the guaranty agency incurs in honoring default claims on qualifying loans.  After the guarantor has been reimbursed, it must try to collect the debt from the debtor, using various methods that may include administrative wage garnishment and placing the debtor into the Treasury Offset Program ("TOP").  The

---

[1]     Federal Stafford loans available under the FFELP should be distinguished from Direct Stafford Loans available under the federally sponsored Federal Direct Student Loan Program, established in 1993.  *See* 20 U.S.C. §§ 1087a-1087j.  Under the Direct Student Loan Program, the United States government makes the educational loan directly to the student and/or parent though the participating institution of higher education.  20
(Footnote Continued on Next Page)

guarantor must remit to the DOE a corresponding percentage of any amounts it recovers directly from the debtor. If the guarantor is unable to obtain payment from the debtor for a significant period of time, the DOE may require the guarantor to assign the loan to the DOE. After the DOE takes assignment, it then undertakes its own collection efforts, including referring the matter to the United States Attorney's Office for litigation.

*Moriarty's Loans*

Moriarty applied for and obtained five Stafford student loans totaling $14,375 from First Federal Savings and Loan Association between 1980 and 1984. The loans were guaranteed by the Higher Education Assistance Foundation ("HEAF"). First Federal Savings and Loan Association eventually sold the loans to Norwest Bank Minnesota, where they were serviced by different agencies, and then transferred to HEAF. Eventually, HEAF transferred them to the DOE, who in turn referred them to the Government for litigation.

Three of the loans were for $2,500 each, one loan was for $1,875, and a fifth loan was for $5,000. The interest rate for each loan was 7% per annum. Under the terms of the loans, the notes became due and payable nine months after Moriarty ceased being a half-time student (the "grace period"). The loans also allowed Moriarty to be given a deferment under certain circumstances and to receive a six-month post-deferment grace period.

---

(Footnote Continued From Previous Page)
U.S.C. §§ 1807a-1087b.

The parties agree that Moriarty first attended St. Mary's University and later Cardinal Newman College full-time until May 2, 1985. After that time, she attended the University of Minnesota on a half-time basis during the following periods: (1) September 26, 1985, through December 14, 1985; (2) September 25, 1986,[2] through December 13, 1986; (3) March 30, 1987, through June 13, 1987; (4) March 28, 1988, through June 11, 1988; (5) March 27, 1989, through June 10, 1989; (6) January 2, 1990, through March 19, 1990; and (6) January 2, 1991, through June 8, 1991.[3]

According to the Government, Moriarty's nine-month grace period commenced on March 20, 1990, and expired on December 20, 1990. The Government contends that because Moriarty was not enrolled on a half-time basis until after the nine-month grace period expired, her loans properly entered repayment status, and the first payment was due on February 15, 1991.[4] Because Moriarty failed to make any payments on her loans, the Government states that she was in default as of February 14, 1992. Since that time,

---

[2] The parties do not address why the nine-month grace period was not triggered at this time.

[3] In her Answer, Moriarty states that she was also enrolled "and beyond," after this period. (Doc. No. 3 at 2.)

[4] Despite the fact that there is nothing in the record to suggest that Moriarty applied for a deferment, the Government acknowledges the fact that Moriarty is entitled to a deferment of her loans for the period from January 2, 1991 through June 8, 1991, which amounts to an adjustment of $463.05. That amount is calculated by multiplying the original principal balance by the interest rate of 7%, dividing that sum by 365 days, then multiplying that amount by 161 days.

Moriarty has made no voluntary payments on the loans. Instead, the only reductions in her account have been for TOP offsets from federal payments owed to Moriarty from income tax refunds, which amounts to approximately $3,800.

On September 12, 2008, the Government commenced this action against Moriarty, seeking judgment against her for the principal, plus pre-judgment and post-judgment interest and fees and costs associated with Moriarty's loans. According to the Government, as of December 23, 2008, Moriarty owes the Government $14,997.61 in principal and $12,910.93 in accrued unpaid interest. The interest accrues at the rate of $2.87 per day.

## DISCUSSION

### I.     Summary Judgment Motion

The Government moves for summary judgment on its claim, asserting that Moriarty's defenses do not create any genuine issues of material fact and that it is entitled to judgment as a matter of law. Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of

every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

In her Answer, Moriarty admits that she signed the loans and that she has not repaid the loans.[5]  Moriarty presents several defenses for why she has not paid the amounts owing on her loans.  Moriarty maintains that she did not cease to be a half-time student until after her loans were placed in default by the lender and that her loans, therefore, were improperly placed in repayment status.  Moriarty contends that she was never given a chance to make payments and that at least two different loan servicing centers made mistakes concerning her loans after First Federal Savings and Loan Association sold her loans to Norwest Bank Minnesota in February 1991.  (*See, e.g.*, Doc.

---

[5]    This summary of Moriarty's arguments comes from her Answer and statements made at the motion hearing.  Moriarty did not file an opposition to the Government's motion.  Over the Government's objection, the Court allowed Moriarty to present her

(Footnote Continued on Next Page)

No. 3 at 31 (noting that her grace period ended December 31, 1990, as opposed to December 20, 1990), and 34 (noting that Moriarty last attended the University of Minnesota on March 18, 1991, and that she had a six-month grace period).) Moriarty's argument centers on her interpretation of "deferment" and "grace period" and whether those time periods are date or month specific.  According to Moriarty, her grace period ended on December 31, 1990, not December 20, 1990, and that given the New Year's holiday, the earliest date that she could have been enrolled in school was January 2, 1991, which she did.  She maintains that she has properly maintained her "deferment status" since that time.  Finally, Moriarty raises issues relating to the changing amounts due sent to her in the notices of default.

After a careful review of the documents submitted by the parties and the applicable regulations, the Court concludes that Moriarty is mistaken in her interpretation of the terms of her loans.  The Government is correct that the grace period and deferment periods are date-specific, not month specific.  34 C.F.R § 682.200 (defining "grace period" as "[t]he period that begins on the *day* after a Stafford loan borrower ceases to be enrolled as at least a half-time student at an institution of higher education and ends on the *day* before the repayment period begins" (emphasis added)); *see also* Doc. No. 3 at 8, ¶ 11 (explaining grace period ends "9 months after the *date*" which Moriarty ceases to be a half-time student (emphasis added)).  Moriarty's grace period began on

---

(Footnote Continued From Previous Page)
arguments at the motion hearing.

March 20, 1990, and ended on December 20, 1990. Because Moriarty was not enrolled as a half-time student as of that date, her first payment was due on February 15, 1991. 34 C.F.R. § 682.209(a)(3)(C) (setting date on which repayment is due).

It is true that Moriarty was entitled to a deferment for the period from January 2, 1991, through June 8, 1991, when she was a half-time student at the University of Minnesota. As noted previously, the Government concedes that Moriarty should receive credit for this period. However, because there is nothing in the record to suggest that Moriarty applied for a deferment at that time, the then-holder of the loan properly deemed the loan to be in default. 34 C.F.R. § 682.200 (defining default as the failure of borrower to make any payments within the time period required). Once Moriarty's loans were placed in a default status, she was no longer entitled to receive any deferments. 34 C.F.R. § 682.210 (explaining that "a borrower whose loan is in default is not eligible for a deferment on that loan, unless the borrower has made payment arrangements acceptable to the lender prior to the payment of a default claim by a guaranty agency").

With respect to her arguments concerning the changing amounts reflected in the notices she received, the Court finds that Moriarty is again mistaken. Moriarty agreed to pay principal, interest, authorized late charges, collection fees, and reasonable attorney fees. The varying amounts in the notices simply reflect whether the notice is seeking past due amounts only, principal and interest only, or all charges owed, depending on the charges incurred by the then-holder of the loans. Finally, the Government has properly included the TOP offsets in its computation of Moriarty's debt, which includes the original principal, interest, and collection costs and fees. Based on the foregoing, the Court grants the Government's summary judgment motion.

## II.     Motion to Dismiss

In the Prayer for Relief in her Answer, Moriarty seeks judgment against the DOE for $3,840 in TOP offsets, $10,594 in interest for 15 years, and $20,060 in losses alleged caused by lost business income and damaged credit since 1991. To the extent that Moriarty has properly alleged a counterclaim,[6] the Government moves to dismiss the counterclaim for lack of subject matter jurisdiction.

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle with which to seek dismissal of a claim for lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments.

---

6       *Pro se* complaints are to be construed liberally, but they still must allege sufficient
(Footnote Continued on Next Page)

*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Here, the Government challenges Moriarty's counterclaim on its face. When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion under Rule 12(b)(6). *Id.*

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens,* 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955,

---

(Footnote Continued From Previous Page)
facts to support claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964-65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

The Government contends that Moriarty's counterclaim should be dismissed for two primary reasons. The Court agrees. First, the HEA provides no private cause of action for a student loan borrower. *See Labickas v. Arkansas State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996) (reviewing HEA's legislative history and finding it creates no private right of action). Second, because Moriarty's claim sounds in tort, she must comply with the Federal Torts Claim Act ("FTCA") in order to establish the Court's jurisdiction over her counterclaim. She did not. The FTCA is a limited waiver of sovereign immunity that requires compliance with the conditions enacted by Congress. As the Eighth Circuit Court of Appeals has explained, "[t]hese conditions are construed narrowly and include the requirement that before filing an FTCA action the claimant 'present' an administrative claim requesting a sum certain in damages to the appropriate federal agency and that the claim be finally denied." *Bellecourt v. United States*, 994 F.2d, 427, 430 (8th Cir. 1993) (citing 28 U.S.C. § 2675(a)). For these two reasons, the Court dismisses Moriarty's counterclaim with prejudice.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.  The Government's Motion for Summary Judgment and Dismissal of

Counterclaim (Doc. No. 7) is **GRANTED**.

    2.    Moriarty's Counterclaim is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 13, 2009        s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    Judge of United States District Court